TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00134-CV







Mytech Corporation, Appellant



v.



Marc A. Ausman; John Boettiger, Jr.; and Rick Jaros, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-02783, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 








 Mytech Corporation appeals from the trial court's partial summary judgment in
favor of appellees Marc Ausman, John Boettiger, and Rick Jaros ("Consultants") and final
judgment which together denied Mytech's applications to vacate or modify an arbitration award,
granted Consultants' motion to confirm the award and ordered Mytech to pay the Consultants'
attorney's fees of $8,000. Mytech raises three issues on appeal contending the trial court erred
in granting summary judgment in favor of the Consultants and awarding the Consultants their
attorney's fees. We will affirm the trial court's judgment.







Factual and Procedural Background


 Mytech participated in the Quality Management Consortia program operated by the
Graduate School of Business at the University of Texas at Austin. (1) Through this program,
Douglas Myron, president of Mytech, met the Consultants who were MBA students. In the fall
of 1994, the Consultants and Myron agreed that during the 1994-95 school term, the Consultants'
final year in the MBA program, the Consultants would assist Mytech by evaluating the company,
recommending changes, developing a business plan, and looking for investors. Their agreement
was reduced to writing and signed by all parties on January 2, 1995. (2) The agreement provided
in pertinent part the following:


A. Company desires to retain Consultant[s] in connection with assisting Company
in generating a business plan and raising capital (to include capital raised, but not
necessarily received by Company, through private debt or equity financing during
calendar years 1995, 1996, and 1997).


2. Term.

The term of this Agreement shall commence on the date hereof and shall continue
until terminated by mutual agreement (between Company and one representative
from Consultant) or issuance of private debt or equity capital as outlined in the
MyTech Business Plan, or inability of consultant[s] to find investor(s) by May 31,
1995. . . . 




4. Compensation.

Consultant[s] shall receive for compensation for the performance of all services
hereunder the sum of 3% (1% each member) of all private capital raised during
calendar years 1995, 1996, and 1997. The terms of Section 4 shall survive the
term of this Agreement until all fees are paid. 


16. Attorney's Fees & Arbitration.

Any controversy or claim arising out of or relating to this Agreement or the
performance thereunder, including without limitation any claim relating to illness,
injury, or death, shall be settled by binding arbitration in Austin, Texas, in
accordance with the rules of the American Arbitration Association then existing,
and judgment on the arbitration does not waive or modify the terms in Section 3. 


If any legal action or any arbitration or other proceeding is brought for the
enforcement of this Agreement, or because of an alleged dispute, breach o[r]
default in connection with any of the provisions of this Agreement, the successful
or prevailing party shall be entitled to recover reasonable attorney's fees incurred
in this action or proceeding in addition to any other relief to which he or it may be
entitled. 


 On July 28, 1995, the Consultants sent the following letter to Myron:

We are very disappointed in your attempt not to honor our agreement. If you recall
our last meeting as a group in April, we agreed to accept a lower level of
compensation, specifically $4,000 each, to allow you extra funds to compensate
Gerard to help in the fund raising process. The four of us agreed that we would
receive a total of $12,000 for our services to date, including the business plan,
research, and our consulting efforts. 


In our discussions prior to this meeting you had asked us to accept a lower level of
compensation and step out of the money raising process. We accommodated your
request and agreed to accept the $12,000 mentioned above. In this new agreement
we were removed from fund raising efforts and any risks associated with the
process. 


Your expression to us that we "took our chances and lost" was not true. Under our
original written agreement this was the case. But we had subsequently agreed upon
a different compensation package (discussed above) which insulated us from the
results of your fund raising efforts. 


This entire agreement was presented to you in an updated agreement, which we
presented to you over a month ago, and you chose not to act upon. Even though
you never signed the new agreement we have a legally enforceable oral contract
and your decision to bring in additional outside help does not affect Mytech's
commitment to us for $12,000 for services rendered to date. 


Doug, we realize that you are in a cash tight situation, but we worked for you in
good faith of being compensated and we are willing to wait for you to raise external
capital; however, we are unwilling to go uncompensated for our services. 


We suggest the following two alternatives to remedy this situation and are open to
other suggestions.


*Sign and forward a contract to us promising to compensate us within 20 days of
receiving an infusion of capital. 


*Make monthly payments to us of $1,000 over the next twelve months. This level
of cash outflows should be sustainable.


Please contact us within three days of receiving this letter as we would like to
resolve this issue soon. 


 On August 6, 1996, the Consultants filed a request with the American Arbitration
Association ("AAA") for arbitration. Mytech requested an extension to answer until September
23 so that it could hire an attorney. The AAA granted Mytech an extension and noted that if a
response was not received by that date it would proceed to set a hearing date. Mytech did not
respond and the AAA set an arbitration hearing for December 13. The arbitrator held the hearing
on December 13, even though Mytech was unable to send a representative to the hearing. On December 16, Mytech's attorney contacted the AAA and requested a transcript
of the hearing and asked the arbitrator to reopen the hearing so that it might present a defense. 
The arbitrator denied the request for the transcript but allowed Mytech to file a written submission
of its position by December 26. Mytech filed its response on December 26 and then filed
supplemental responses on January 7 and 9, 1997. In its response, Mytech alleged that the
agreement containing the arbitration clause had terminated and currently there was no oral or
written agreement containing an arbitration clause. On January 15, the arbitrator declared the
hearing closed. On February 4, the arbitrator issued an award to the Consultants in the sum of
$76,140.17, impliedly finding that a written agreement to arbitrate existed. (3) 

 On March 6, Mytech filed an application in Travis County district court seeking
to vacate the arbitration award. See Act of May 26, 1995, 74th Leg., R.S., ch. 588, § 1, 1995
Tex. Gen. Laws 3402, 3407 (renumbered without substantive changes by Act of May 8, 1997,
75th Leg., R.S., ch. 165, § 5.01, 1997 Tex. Gen. Laws 329, 334, effective September 1, 1997,
currently codified at Tex. Civ. Prac. & Rem. Code Ann. § 171.088 (West Supp. 1999)). (4) Mytech
alleged three statutory grounds for vacating the award: (1) the agreement to arbitrate had expired
or was terminated before the arbitration commenced; (2) the award was procured by fraud and
undue means; and (3) the award should be vacated because the arbitrator failed to continue or
reopen the hearing. See Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(1), (a)(3)(B), (a)(4)
(West Supp. 1999). Alternatively, Mytech filed an application to modify the arbitration award. 
See Act of May 26, 1995, 74th Leg., R.S., ch. 588, § 1, 1995 Tex. Gen. Laws 3402, 3408
(renumbered without substantive changes by Act of May 8, 1997, 75th Leg., R.S., ch. 165,
§ 5.01, 1997 Tex. Gen. Laws 329, 335, effective September 1, 1997, currently codified at Tex.
Civ. Prac. & Rem. Code Ann. § 171.091 (West Supp. 1999)). The Consultants answered and
counter-claimed with an application to confirm the arbitrator's award. See Act of May 26, 1995,
74th Leg., R. S., ch. 588, § 1, 1995 Tex. Gen. Laws 3402, 3407 (renumbered without substantive
changes by Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 5.01, 1997 Tex. Gen. Laws 329,
334, effective September 1, 1997, currently codified at Tex. Civ. Prac. & Rem. Code Ann.
§ 171.087 (West Supp. 1999)). Additionally, the Consultants sought post-award interest,
attorney's fees and costs. The Consultants then filed a motion for summary judgment on Mytech's
claims to which Mytech responded. 

 The trial court denied Mytech's application to vacate the arbitrator's award as well
as its application to modify or correct the arbitrator's award. The trial court granted the
Consultants' motion for summary judgment, confirmed the arbitrator's award of $76,140.17 and
awarded Consultants post-award interest and attorney's fees. Mytech appeals. 


Discussion


 On appeal Mytech raises three issues. First, Mytech contends its evidence
submitted in response to the Consultants' summary-judgment motion created an issue of fact about
whether the operative agreement existing between the parties contained an arbitration clause.
Additionally, Mytech contends the Consultants failed to provide summary-judgment evidence that
showed as a matter of law Mytech could not prevail on two statutory grounds pleaded by Mytech
as a basis for vacating the arbitration award. Finally, Mytech contends the Consultants were not
entitled to recover their attorney's fees. 


Standard of Review

 Texas courts favor arbitration agreements. See Jack B. Anglin Co. v. Tipps, 842
S.W.2d 266, 268 (Tex. 1992). Therefore, any doubts regarding the scope of an arbitration
agreement are resolved in favor of arbitration. Nationwide of Fort Worth, Inc. v. Wigington, 945
S.W.2d 883, 884 (Tex. App.--Waco 1997, writ dism'd w.o.j.). When reviewing arbitration
awards, courts indulge every reasonable presumption in favor of upholding the awards. Brozo v.
Shearson Lehman Hutton, Inc., 865 S.W.2d 509, 510 (Tex. App.--Corpus Christi 1993, no writ)
(citing House Grain Co. v. Obst, 659 S.W.2d 903, 905 (Tex. App.--Corpus Christi 1983, writ
ref'd n.r.e.)). 

 Because the trial court granted the Consultants' motion for summary judgment, our
review is filtered through the summary-judgment standard. Movants for summary judgment have
the burden to show that there are no genuine issues of material fact and that they are entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Brozo, 865 S.W.2d at 511 (citing Nixon
v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). Therefore, our task
is to construe all evidence, reasonable inferences, and doubt against the judgment of the trial court,
which construed every reasonable presumption in favor of the arbitration award. See Brozo, 865
S.W.2d at 511. 


Contentions for Vacating Arbitration Award

 In its first issue, Mytech contends the trial court erred by granting summary
judgment in favor of the Consultants because, based upon its summary-judgment evidence, an
issue of fact remains about whether the parties had an existing arbitration agreement. Mytech
submitted an affidavit from Myron and a copy of the Consultants' July 28 letter as summary-
judgment proof. Myron stated in his affidavit that the agreement referred to in the July 28 letter
constituted the existing agreement between the parties at the time of the arbitration and that
agreement did not contain an arbitration provision. 

 Upon application of a party, the court shall vacate an award where no arbitration
agreement existed, the issue was not adversely determined in trial-court proceedings before
arbitration, and the party "did not participate in the arbitration hearing without raising the
objection." See Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4) (West Supp. 1999). The
parties make no mention of any district court proceedings addressing the existence of an arbitration
agreement before the arbitration hearing and there is no indication in the record that any occurred. 
The remaining question before us, therefore, is whether Mytech participated in the arbitration
proceeding without objecting that no arbitration agreement existed. 

 First, we conclude Mytech participated in the arbitration hearing. Although Mytech
did not appear with the other parties at the hearing on December 13, the arbitrator reopened the
hearing specifically to allow Mytech to file a written response and present any evidence in its
defense. Mytech filed a written response and later filed a supplemental response before the
arbitrator finally closed the hearing on January 15. 

 Second, we conclude Mytech raised the issue of whether an arbitration agreement
existed between the parties before the arbitrator. In Mytech's response letter to the arbitrator and
Myron's accompanying affidavit submitted on December 26, Mytech specifically argued that the
Consultants terminated the January 2 written agreement that contained the arbitration clause, and
that currently no written or oral agreement existed. Mytech continued its argument before the
arbitrator asserting that even if an oral agreement existed, that agreement was outside the scope
of arbitration because there was no agreement to submit any claim under an oral agreement to
arbitration. Further, Mytech argued to the arbitrator that even if an oral agreement to arbitrate
existed it was unenforceable because an agreement to arbitrate must be in writing. Finally,
Mytech argued, in the alternative, that if the arbitrator deemed the July 28 letter a modification
of the January 2 agreement, the most the Consultants could recover was $12,000. Thus, Mytech
clearly raised an objection before the arbitrator that no agreement to arbitrate currently existed. 

 While the summary-judgment proof raises the question about the existence of an
arbitration agreement between the parties, the proof also shows as a matter of law that Mytech
raised the argument before the arbitrator. Because Mytech raised the question of the existence of
an agreement before the arbitrator, it may not reurge the same argument before the trial court. 
See Tex. Civ. Prac. & Rem. Code Ann. § 171.088 (a)(4) (West Supp. 1999). Issue one is
overruled.

 In its second issue, Mytech contends the trial court erroneously granted summary
judgment because the Consultants' evidence failed to address the two remaining statutory grounds
pleaded by Mytech to vacate the arbitration award. Mytech pleaded that the arbitration award
should be vacated because (1) the award was procured by fraud and undue means and (2) the
arbitrator failed to continue or reopen the hearing after a showing of sufficient cause for
postponement. See Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(1),(a)(3)(B) (West Supp.
1999). 

 We first address Mytech's contention that the Consultants failed to show as a matter
of law that the award was not procured by corruption, fraud or other undue means. See Tex. Civ.
Prac. & Rem. Code Ann. § 171.088(a)(1) (West Supp. 1999). Specifically, Mytech argues that
the Consultants' summary-judgment proof failed to negate Mytech's allegation that the Consultants
could not recover the arbitration award because they were not registered securities dealers who
were subject to limited exemptions from registration. See Tex. Rev. Civ. Stat. Ann. art. 581-4(C)
(West Supp. 1999). Mytech urges that because the Consultants were not registered securities
dealers they could not recover sales commissions, the basis for the arbitration award. See Tex.
Rev. Civ. Stat. Ann. arts. 581-12, 581-33(K) (West Supp. 1999). 

 An arbitration award is conclusive on the parties as to all matters of fact and law
because the award has the effect of a judgment of a court of last resort. Anzilotti v. Gene D.
Liggin, Inc., 899 S.W.2d 264, 266 (Tex. App.--Houston [14th Dist.] 1995, no writ) (citing Bailey
& Williams v. Westfall, 727 S.W.2d 86, 90 (Tex. App.--Dallas 1987, writ ref'd n.r.e.)). A
mistake of fact or law is insufficient to set aside an arbitration award. Anzilotti, 899 S.W.2d at
266. In reviewing Myron's affidavit submitted to the arbitrator, issues about whether the
Consultants were entitled to commissions were presented to the arbitrator. We conclude that
Mytech is attempting to redetermine facts that were decided by the arbitrator. The trial court did
not err in granting summary judgment in favor of the Consultants on this statutory basis.

 Finally, Mytech contends the Consultants failed to show as a matter of law that the
arbitrator failed to continue or reopen the hearing after Mytech showed sufficient cause to do so. 
See Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(B) (West Supp. 1999). 

 When no response was received from Mytech on September 23 after granting
Mytech's extension request, the AAA notified the parties that an arbitrator had been appointed for
the case. On November 7, the arbitrator requested that the parties submit to him possible hearing
dates. Mytech did not respond. On November 21, the AAA notified the parties by certified mail
that an arbitration hearing was set for December 13. See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.044(b) (West Supp. 1999) (parties must be given at least five days notice of date for
arbitration hearing). It was not until Saturday, December 7, that Myron opened the letter
informing Mytech that the arbitration was set for December 13. On Tuesday, December 10,
Myron notified the AAA case manager by phone that he was in New York and would be
unavailable for a hearing in Austin on December 13. On December 12 at 4:00 p.m., the AAA
received a handwritten notice from Myron stating that he could not attend the December 13
arbitration hearing and that he was requesting a new hearing date after the first of the year. The
arbitrator considered the circumstances and ruled that the hearing would proceed on December 13
without a representative present for Mytech. (5) On December 16, Mytech complained to the
arbitrator that the hearing should be reopened since Myron, by his accompanying affidavit, had
shown good cause to reopen the hearing.

 Even though Mytech did not respond to any of the AAA's correspondence after
receiving a continuance until September 23 and only at the last minute complained to the arbitrator
that it could not send a representative to the hearing, the arbitrator reopened the hearing and
allowed Mytech to submit a written response and evidence supporting its position. We conclude
that rather than the arbitrator failing to continue the hearing as Mytech asserts, the record shows
the arbitrator did just the opposite. The arbitrator specifically reopened the hearing to allow
Mytech to submit arguments and evidence supporting its position. 

 Additionally, Myron's affidavit states that he "found out [about the hearing] on
December 7, 1997." He stated that he did not learn about the hearing sooner because no one else
was authorized to open his certified mail. Based on Myron's affidavit, Mytech received six days
notice of the hearing. Even receiving notice on December 7, Mytech received the required
statutory time for notice of an arbitration hearing. See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.044(b). The trial court did not err in granting summary judgment on the statutory basis that
the arbitrator failed to continue or reopen the hearing on a showing of good cause. Issue two is
overruled.


Attorney's Fees

 In its third issue, Mytech contends the trial court erred in awarding the Consultants'
attorney's fees of $8,000 on their suit to confirm the arbitration award. A party may only recover
attorney's fees pursuant to a contractual provision or a statute. Monday v. Cox, 881 S.W.2d 381,
386 (Tex. App.--San Antonio 1994, writ denied) (citing First City Bank v. Guex, 677 S.W.2d 25,
30 (Tex. 1984)). Texas law allows recovery of attorney's fees as an addition to a valid contractual
claim. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997). Regarding a statutory
action to confirm, modify, or correct an arbitration award, the arbitration act authorizes recovery
of costs only; it does not authorize recovery of attorney's fees. See Tex. Civ. Prac. & Rem. Code
Ann. § 171.092(b) (West Supp. 1999). Additionally, a statute authorizing recovery of costs does
not cover attorney's fees. Monday, 881 S.W.2d at 386 (citing American Airlines, Inc. v. Swest,
Inc., 707 S.W.2d 548, 548 (Tex. 1986)).

 Mytech argues that the trial court erroneously awarded the Consultants' attorney's
fees because the arbitration act does not provide for recovery of attorney's fees and the action to
confirm the arbitration award was not within the purview of the January 2 agreement. The
Consultant's respond that the action to confirm the arbitration award was within the broad
language of the January 2 agreement and was the basis for the attorney's fees award.

 We agree with Mytech that the arbitration act does not provide for recovery of
attorney's fees. However we disagree with Mytech that the action to confirm the arbitration award
was not within the purview of the language of the January 2 agreement. The January 2 agreement
expressly provided that the prevailing party may recover its attorney's fees "if any legal action
or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because
of an alleged dispute, breach o[r] default in connection with any of the provisions of this
Agreement." (Emphasis added.) The Consultants' suit to confirm the arbitration agreement was
a legal action brought because of disputes with provisions of the January 2 agreement. We
conclude that, under the broad language of the January 2 agreement, the Consultants were entitled
to recover their attorney's fees. Issue three is overruled. 



Conclusion


 The trial court correctly indulged every reasonable presumption in favor of the
arbitration award and awarded the Consultants' attorney's fees pursuant to the January 2
agreement. We affirm the trial court's judgment. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: April 22, 1999

Do Not Publish























* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998). 
1.   The Quality Management Consortia is a program in which a company pays an annual fee in
exchange for graduate business or engineering students, paid by the consortia, to work for the
company as interns for ten hours a week. 
2.   This agreement was a business contract separate and apart from the Consultants commitment
to Mytech under the Quality Management Consortia program.
3.   This sum represents $60,000 (3% of $2,000,000 equity capital in 1995 and 1996), $15,000
attorney's fees and expenses of $201 and $939.17. 
4.   For convenience we will refer to the current section numbers of all of the statutory provisions. 

5.   Unless otherwise provided by the agreement to arbitrate, the arbitrator may hear and determine
the controversy on the evidence produced without regard to whether a party who was notified
according to section 171.044 fails to appear. See Tex. Civ. Prac. & Rem. Code Ann. § 171.046
(West Supp. 1999). 


, 881 S.W.2d at 386 (citing American Airlines, Inc. v. Swest,
Inc., 707 S.W.2d 548, 548 (Tex. 1986)).

 Mytech argues that the trial court erroneously awarded the Consultants' attorney's
fees because the arbitration act does not provide for recovery of attorney's fees and the action to
confirm the arbitration award was not within the purview of the January 2 agreement. The
Consultant's respond that the action to confirm the arbitration award was within the broad
language of the January 2 agreement and was the basis for the attorney's fees award.

 We agree with Mytech that the arbitration act does not provide for recovery of
attorney's fees. However we disagree with Mytech that the action to confirm the arbitration award
was not within the purview of the language of the January 2 agreement. The January 2 agreement
expressly provided that the prevailing party may recover its attorney's fees "if any legal action
or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because
of an alleged dispute, breach o[r] default in connection with any of the provisions of this
Agreement." (Emphasis added.) The Consultants' suit to confirm the arbitration agreement was
a legal action brought because of disputes with provisions of the January 2 agreement. We
conclude that, under the broad language of the January 2 agreement, the Consultants were entitled
to recover their attorney's fees. Issue three is overruled. 



Conclusion


 The trial court correctly indulged every reasonable presumption in favor of the
arbitration award and awarded the Consultants' attorney's fees pursuant to the January 2
agreement. We affirm the trial court's judgment. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: April 22, 1999

Do Not Publish























* Before John E. Powers, Senior Justice,